## THE MICHIGAN CENTRAL RAILROAD COMPANY

*v.*

## ABNER C. BOYD *et al.*

1. CARRIER—*lex loci governs as to contract.* The law of the State in which the contract is made for the transportation of goods must control as to its nature, interpretation and effect.

2. SAME—*limitation of liability by laws of Massachusetts.* By the law of Massachusetts, in order to limit the carrier's common law liability by a clause in the bill of lading or receipt, the bill of lading must be taken by the consignor, without dissent, *at the time of the delivery* of the property for transportation. When given a few days after the delivery of the goods, and while they are in transit, such a clause therein, not assented to by the consignee and owner, will not be binding on the latter. The consignor can not bind the consignee after the goods have passed beyond the control of the former, and his agency has ceased.

APPEAL from the Circuit Court of Cook county; the Hon. W. K. McALLISTER, Judge, presiding.

This suit was brought by appellees against appellant in the court below, to recover for certain goods delivered to the latter to be carried for the former, and which were destroyed by the great fire in Chicago, October 9, 1871.

By stipulation of parties, the following are the facts: That on October 2, 1871, defendant was a common carrier of goods for hire between Detroit, Mich., and Chicago, Ill., and ever since has been and still is; that on said second day of October, 1871, the plaintiffs were the owners of certain goods described in the declaration herein, to-wit: two cases of merchandise, of the value of $578.40; that on the last named day Messrs. Wellington Bros., of Boston, Mass., from whom said goods were purchased by plaintiffs, delivered the said goods to the Boston and Albany Railroad Company for transportation, by " Blue Line," marked " Boyd & Paisley, Lincoln, Ill., via Chicago ;" that the agent of said Boston and Albany Railroad Company who received said goods at Boston, delivered to the drayman who brought the same from said Wellington Bros.,

what is known as a dray receipt; that within a few days there-after, and after said goods were on their way, upon the pre-sentation by said consignors, Wellington Bros., of said dray receipt, and at their request, said Boston and Albany Railroad Company delivered to said consignors a receipt or bill of lad-ing, which is hereto attached and made a part hereof, marked "Exhibit A;" that on the 6th day of October, 1871, the said goods were delivered to said defendant, at its eastern terminus, at Detroit, in the State of Michigan, and were by said defend-ant transported to the city of Chicago, where they arrived on Sunday, the 8th day of October, A. D. 1871, at 1:20 P. M., and were on the same day unloaded from the cars into the warehouse of defendant, at Chicago, in due course of business; that said warehouse was a safe and substantial structure, built of stone, brick and iron; that the said warehouse and its con-tents, including the goods in controversy, were destroyed in the great fire at Chicago, between 1 and 9 o'clock on the morn-ing of the ninth day of October, A. D. 1871, without the fault of the defendant, and it was impossible for defendant to have delivered said goods to the connecting carrier after 6 o'clock A. M. of said October 9, because of such fire; that prior to said second day of October, A. D. 1871, said consignors, Wel-lington Bros., had been in the habit of shipping goods in the same manner as the goods in controversy were shipped, and of receiving for all such shipments bills of lading similar in import to the one hereto attached, without their attention having been particularly directed to the conditions or restric-tions of said bills of lading pertaining thereto, and that said plaintiffs had, at several times before the shipment of the goods in controversy, received goods at Lincoln, Ill., aforesaid, at said several times, from the same consignors, and over the same line of road, and under bills of lading similar to the one hereto attached, without their attention having been called to the particular terms of said bills of lading.

It is further understood by and between the parties to the above stipulation, that the term "Blue Line" therein used

shall not be taken to and does not indicate a partnership or corporation, but simply the route over which plaintiffs' goods were to be transported.

"Exhibit A" to the stipulation contains, among other things, the following:

"Great Central Route, 'Blue Line,' from the Atlantic to the Mississippi without change of cars, by arrangement between the following railroad companies, viz: (naming them, and including the Boston and Albany and Michigan Central Railroad Companies.)

Boston Office, 69 Washington St.        P. K. Randall, New England Ag't.

*Boston, Oct.* 2, 1871.

| Said to be marked Boyd & Paisley, Lincoln, Ill., via Chicago. Charges advanced in Boston, $...... | Received of Wellington Bros. & Co.—B. and A. R. R. Receipt for Weight subject to correction. |
|---|---|
| Bill of Lading, Boston to Chicago Depot. | Two (2) cases mdse. No. 54—399 lbs. 9,674—345 " |

"The above described package (contents and value unknown), consigned as marked and numbered in the margin, to be transported over this line and delivered to the consignee, or to the next company or carriers (if the same is to be forwarded beyond), for them to deliver to the place of destination of said goods or package, it being distinctly understood that the responsibility of this line as common carriers shall cease at the station where delivered to such consignee or carriers.

"The rate of freight for the transportation of said package from Boston to Chicago, guaranteed as per rate entered in the margin, and charges advanced by these companies, *upon the following conditions,* *  *  *

"Freight carried by these companies must be removed from the station, during business hours, on the day of its arrival, or it will be stored at the owner's risk and expense; and in the event of its destruction or damage, from any cause, while in the depot of any company, it is agreed that the company shall not be liable to pay any damages therefor. *  *  *

"It is agreed, and is a part of the consideration of the contract, that the companies will not be responsible for   *   *   * loss or damage to goods occasioned by Providential causes, or by fire from any cause whatever while in transit or at stations.   *   *   *

   (Signed,)                    P. K. RANDALL, *Ag't."*

And, also, upon the statement of the law of the State of Massachusetts, as laid down in the case of *Grace* v. *Adams*, in the 100th Massachusetts Report, and in the case of *Hoadly* v. *Northern Transportation Co.*, in the 115th Massachusetts Report.

The finding and judgment of the court was in favor of appellees.   The error assigned questions this finding and judgment of the court.

Mr. WIRT DEXTER, for the appellant.

Mr. C. A. MORAN, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The contract for the carriage of the goods having been made in Massachusetts, the law of that State must control as to its nature, interpretation and effect.   *Pennsylvania Co.* v. *Fairchild*, 69 Ill. 261; *Milwaukee and St. Paul Railroad Co.* v. *Smith*, 74 id. 197.

The law of Massachusetts is, by the stipulation, to be accepted as stated in the opinions of the Supreme Court of that State in *Grace* v. *Adams*, 100 Mass. 505, and *Hoadly* v. *Northern Trans. Co.* 115 id. 304.   It is: "A bill of lading, or shipping receipt, taken by a consignor without dissent, at the time of the delivery of the property for transportation, by the terms of which the carrier stipulates against such liability, (*i. e.*, the liability of a carrier, in the absence of a special contract, under the common law,) would exempt the carrier when the loss was not caused by his own negligence, on the ground that such

acceptance would authorize him to infer assent, and amount to evidence of the contract between the parties."

It will be observed this requires that the bill of lading or shipping receipt shall be taken by the consignor without dissent *at the time of the delivery of the property for transportation.* But the bill of lading here relied on, as showing an exemption, was not accepted by the consignor *at the time of the delivery of the property for transportation.* The stipulation is, that within a few days after the goods were delivered for transportation, "and after said goods were on their way," upon the presentation of the dray receipt for the goods, and at the request of the consignors, the bill of lading was delivered. This we can not regard as the equivalent of a delivery of a bill of lading at the time of the delivery of the property for transportation. It does not appear, when this bill of lading was delivered, the consignors had any authority to bind the consignees by any contract in regard to the goods. The goods had then passed entirely beyond their control; and, inasmuch as it is the act of accepting the bill of lading without dissent which creates the presumption of assent to its terms, it follows that the consignor must, at the time, have been acting as the agent of the consignee, to bind him. An agent, after the termination of his agency, can do no act which can relate back to and become evidence of a contract made by him whilst he was agent.

We are furnished with no authority that, under the law of Massachusetts, the evidence of prior shipments and the acceptance of like bills of lading by the same consignors, qualified as it is by the fact that their attention was never called to the exemptions and restrictions in the bill of lading, is sufficient to raise the presumption that the parties intended these goods were to be carried subject to the exemptions and restrictions of this bill of lading, and, in our opinion, such presumption should not follow.

The judgment is affirmed.

*Judgment affirmed.*