## The Illinois Central Railroad Company

### v.

## Emma Beebe, Admx.

*Opinion filed June 18, 1898.*

1. Carriers—*sudden starting or unusual jerking of train indicates negligent management.* Where a freight train, after stopping, is suddenly started, thereby injuring a passenger lawfully on the train in charge of stock, as he was preparing to alight to feed and water the stock, as required by his shipping contract, a jury will be justified in finding the carrier negligent, if it is shown the passenger was using ordinary care.

2. Same—*effect of provision in contract requiring shipper to ride in caboose.* A provision in a stock contract requiring the shipper to ride in the caboose does not exempt the carrier from liability for an injury to the shipper in being thrown from the freight car in which he was riding with the stock, and which he had entered in order to feed and water them, as required by his contract, where the carrier failed to give him a reasonable time to do the work and return to the caboose before starting.

3. Same—*carrier must give shipper a reasonable time to care for stock en route.* Where a shipper of stock assumes the duty of feeding and watering them *en route*, thereby relieving the carrier of that duty, the carrier must furnish him a reasonable opportunity and reasonable facilities for doing the work, and is negligent if it fails to discharge such duty.

4. Same—*shipper traveling in charge of stock is a passenger for hire.* A person traveling on a freight train with the consent of the carrier, in charge of stock, is a passenger for hire, the consideration being his services in caring for the stock or the charge for transporting the shipment.

5. Same—*carrier of passengers cannot exempt itself from liability for ordinary negligence.* The rule permitting a carrier to exempt itself by a contract from liability except in case of gross negligence, applies only to the carriage of property and not to the carriage of passengers, whether the passenger is riding on a freight train with the carrier's consent, or on a passenger train.

6. Conflict of Laws—*lex loci contractus controls validity of entire contract.* Where an indivisible contract is to be partly performed in the State where made and partly in another State, the law of the State where made governs its validity, and if invalid in that State it is invalid everywhere.

7. Appeals and Errors—*what questions settled by judgment of Appellate Court.* Whether a stock shipper was guilty of contributory

negligence in riding in the car with his stock, and whether he was obliged to remain in the car because of the carrier's failure to allow him a reasonable time to do his work and return to the caboose, are questions of fact finally settled in the Appellate Court.

8. Same—*party cannot complain of instructions similar to his own.* One cannot complain of instructions given for his opponent which are similar, in effect, to those asked and given in his own behalf.

9. Trial—*counsel may make reasonable comments on bearing of witnesses.* In arguing a case to the jury, counsel may make reasonable comments upon the evidence and upon the bearing of witnesses in giving testimony.

*Illinois Central Railroad Co.* v. *Beebe,* 69 Ill. App. 363, affirmed.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. Thomas F. Tipton, Judge, presiding.

This is an action on the case, brought by appellee against appellant for alleged negligence in causing the death of her intestate. The jury found the issues for the plaintiff, assessing her damages at $5000.00. A new trial was denied, and judgment was rendered on the verdict. Upon appeal to the Appellate Court, this judgment has been affirmed, and the present appeal is prosecuted from such judgment of affirmance.

The facts out of which the questions involved arise are substantially as follows: On April 15, 1894, the appellee's intestate, Charles I. Beebe, who lived at Webster City, Iowa, chartered a car over the appellant's railroad from Webster City, Iowa, to West Lebanon, Indiana, and placed his horses, seven in number, in one end of the car, and his household goods in the other end thereof, to be carried to West Lebanon, Indiana, by way of Dunbar, Freeport, LaSalle and Wenona, Illinois. Between the doors of the car were two barrels of water, and hay and oats and boxes. The train, of which the car chartered by the deceased was a part, was a through freight train, which left Webster City about seven o'clock in the morning of said 15th day of April. The train reached Free-

port, Illinois, some time after eleven o'clock in the night of that day. The car in question was then put into another train going south, and was the seventh car from the engine. The train leaving Freeport reached LaSalle at about a quarter past five o' clock in the morning of April 16, and there stopped to change engines. At La-Salle, Beebe watered his horses with the consent of the conductor, and pursuant to an arrangement with him. The horses were in the back part of the car with their heads to the east, and separated from the household goods by a plank nailed across the car, some three feet above the floor. The horse next to the plank was a small broncho pony which had been used for family driving. On account of the way in which the goods were loaded, the east door of the car could not be opened. The deceased was assisted in watering his stock by the conductor and the brakeman. As soon as the last bucket of water was handed up to the deceased through the door on the west side of the car, which was the only door open, the train pulled out, Beebe being still in the car, and did not stop again until it reached Wenona, twenty miles to the south. The train arrived at Wenona a little after six o'clock in the morning of April 16. At Wenona the appellant's road crossed the road of the Chicago and Alton Railroad Company on an up-grade. As the train pulled down over the crossing of the Chicago and Alton railroad, it was subjected to a severe and violent jerking and jumping, and Beebe, who had remained in his car all the way from LaSalle, fell, or was thrown out of the west door. His right foot and ankle, being caught under the wheels, were crushed and, within three hours, amputated by the company's local surgeon. About seven o'clock in the evening of the next day he died.

The appellant introduced in evidence a certain live stock contract, executed on April 15, 1894, between the deceased, Beebe, as shipper, and the appellant by its agent. Certain provisions in print precede the contract,

and refer to the contract as one to be executed in duplicate by the shipper and the agent of the company. The provision hereinafter quoted seems to be a part of the preface to the contract, and not of the contract itself; but, as both parties treat it as being embodied in the contract, it is here set forth as a part thereof. The provision referred to is as follows: "The owner will feed, water and take care of his stock at his own expense and risk. Free transportation will be given to the owner or his *bona fide* employes in charge of the stock, as per current instructions given to agents. Persons so passed will be conveyed at their own risk of personal injury from any cause whatever, except injuries arising from gross carelessness of the company, and must ride in the caboose attached to the train conveying the stock."

Williams & Capen, for appellant:

It is not only the right, but the duty, of a railroad company to make reasonable regulations on what part of a train a shipper or passenger shall ride. *Railroad Co.* v. *Whittemore*, 43 Ill. 420; *Tuley* v. *Railroad Co.* 41 Mo. App. 432; *Day* v. *Owen*, 5 Mich. 520; *Law* v. *Railroad Co.* 32 Iowa, 534; *Cooper* v. *Railroad Co.* 44 id. 134; *McKinley* v. *Railroad Co.* id. 314; *Railroad Co.* v. *Williams*, 55 Ill. 185.

A special contract for transporting live stock at the risk of personal injury to the shipper in charge is valid, except for gross negligence, fraud or willful wrong. *Meuer* v. *Railway Co.* 59 N. W. Rep. 945.

Where a shipper selects a place not intended for him to ride, and is injured by reason of hazards peculiar to that position, he cannot recover. *Carroll* v. *Rapid Trans. Co.* 17 S. W. Rep. 889; *Railroad Co.* v. *Reilley*, 40 Ill. App. 416; *Railway Co.* v. *Allender*, 47 id. 484; *Abend* v. *Railroad Co.* 111 Ill. 202; *Railroad Co.* v. *Casey*, 9 Ill. App. 632; *Railroad Co.* v. *Yarwood*, 15 Ill. 468; *Railroad Co.* v. *Lane*, 83 id. 448; *Railway Co.* v. *Shacklett*, 19 Ill. App. 145; *Railroad Co.* v. *Hazzard*, 26 Ill. 373; *Railroad Co.* v. *Coultas*, 67 id. 398.

The contract of the shipper that he would ride only in the caboose is valid and binding, and if his injury is caused by the breach of such contract he cannot recover. *Railroad Co.* v. *Morrison,* 19 Ill. 136; *Railroad Co.* v. *Montfort,* 60 id. 175; *Anchor Line* v. *Knowles,* 66 id. 150; *Railway Co.* v. *Black,* 11 Ill. App. 465.

For a person to ride upon an improper and dangerous part of a train is negligence.    *Doggett* v. *Railroad Co.* 34 Iowa, 284.

In the absence of a contract the safe and proper place for a passenger on a freight train is, under all ordinary circumstances, in the caboose; and ordinarily it is such negligence to be riding elsewhere that a passenger can not recover damages for injuries sustained when he is riding upon a car other than the caboose.    *Player* v. *Railroad Co.* 12 Am. & Eng. Ry. Cas. 112.

Where the negligence of a party contributes materially to the injury he cannot recover.  This is elementary. *Strand* v. *Railroad Co.* 31 Am. & Eng. Ry. Cas. 54.

The municipal laws of a particular State, especially laws of a prohibitory kind, are, as a rule, directed only to things done within its jurisdiction.    Pollock on Contracts, 339; *Milne* v. *Moreton,* 6 Binn. 353; *Hoyt* v. *Thompson,* 19 N. Y. 207; *Adams* v. *Robertson,* 37 Ill. 45.

Where a contract is to be performed in a State other than where it is made, the law of the State in which it is to be performed governs, as to its construction and effect. Story on Conflict of Laws, 242, 280, 233; Wharton on Conflict of Laws, sec. 401; Wharton on Contracts, sec. 361; 3 Am. & Eng. Ency. of Law, 546, 571, 575; Wheeler on Carriers, chap. 8; *Brown* v. *Railroad Co.* 83 Pa. St. 316; *Downer* v. *Cheesebrough,* 36 Conn. 39.

For interpreting a bill of lading with regard to the construction of contracts limiting the carrier's liability for negligence, the law of the place of performance determines the conditions of performance.  Wharton on Contracts, sec. 876; Wharton on Conflict of Laws, sec. 473;

Wheeler on Carriers, chap. 8; *Gray* v. *Jackson*, 51 N. H. 9; *Brown* v. *Railroad Co.* 83 Pa. St. 316.

The question of liability for negligence is determined by the law of the place where the injury was received. *Railroad Co.* v. *Doyle*, 60 Miss. 977; *Wooden* v. *Railroad Co.* 26 N. E. Rep. 1050; *Lewis* v. *Headley*, 36 Ill. 433.

Fifer & Barry, and A. B. Davidson, for appellee:

The law of the State in which the contract for carrying is made, controls as to its nature, interpretation and effect. *Pennsylvania Co.* v. *Fairchild*, 69 Ill. 260; *Railway Co.* v. *Smith*, 74 id. 197; *Railroad Co.* v. *Boyd*, 91 id. 268.

As to contracts performable in parts, and which are performable partly in one State and partly in another, the law of the place where the contract is made prevails. Rorer on Inter-State Law, 68.

If a contract be entire and indivisible, and is to be partly performed in the State where it is made, and partly in another, then the *lex loci contractus*, or law of the State where it is made, governs as to its validity, and if invalid there it is invalid everywhere else. Rorer on Inter-State Law, 69.

One traveling on a pass in charge of stock, when he pays the regular freight for transportation of his stock, is a passenger for hire, and the company cannot limit its liability for injury caused by its negligence. Such a contract is void, as against public policy. *L. & G. W. S. Co.* v. *Insurance Co.* 129 U. S. 397; *Lewisohn* v. *Nat. S. Co.* 56 Fed. Rep. 602; *Railway Co.* v. *Lockwood*, 17 Wall. 357; *Railroad Co.* v. *Stevens*, 95 U. S. 655; *Monroe* v. *"The Iowa,"* 50 Fed. Rep. 561; *Railroad Co.* v. *Curran*, 16 Ohio St. 1; *Railway Co.* v. *Spangle*, 44 id. 471; *Railroad Co.* v. *Beaver*, 41 Ind. 493; *Railroad Co.* v. *Selby*, 47 id. 471; *Railroad Co.* v. *Nickless*, 71 id. 271; *Railroad Co.* v. *Henderson*, 51 Pa. St. 315; *Railroad Co.* v. *Ivy*, 71 Tex. 409; *Muslin* v. *Railroad Co.* 14 W. Va. 180; *Railroad Co.* v. *Miles*, 40 Ark. 298; *Carroll* v. *Railroad Co.* 88 Mo. 239.

Whether plaintiff was injured as charged in his declaration, whether the injury was caused through defendant's negligence, and whether the plaintiff was guilty of contributory negligence, are all questions of fact finally settled in the Appellate Court. *Linseed Oil Co.* v. *McBlaine,* 164 Ill. 597.

The plaintiff is entitled to have his case considered by the jury if the evidence tends to prove ordinary care on his part and negligence on the part of the company. *Railroad Co.* v. *Sanders,* 166 Ill. 270; *Railroad Co.* v. *Luebeck,* 157 id. 595.

A person who is traveling, with the consent of the railroad company, upon a freight train, in charge of stock or goods carried by the company for hire, is a passenger. *Railroad Co.* v. *Blumenthal,* 160 Ill. 47.

A carrier will be held to the same strict accountability for the negligence of its servants resulting in injury to a passenger who is lawfully and properly on a freight train as governs its liability for such negligence when the transportation is upon a train devoted to passenger service exclusively. *Railroad Co.* v. *Blumenthal,* 160 Ill. 47.

Mr. Justice Magruder delivered the opinion of the court:

*First*—At the close of the evidence the defendant presented to the court a written instruction, saying to the jury, "that there is no evidence to support a verdict for the plaintiff, if rendered in this case; and you are accordingly instructed to return a verdict for the defendant." This instruction was refused, and its refusal is assigned as error.

After a careful examination of the case we are of the opinion, that there was evidence tending to support the cause of action set up in the declaration, and, therefore, the court committed no error in refusing to take the case from the jury. The declaration alleges in substance, that, the train having come almost to a standstill, the

engineer negligently, carelessly, suddenly, violently and without warning started the engine forward, and thereby, with great force and violence, jerked the car in which the deceased was a passenger, by means of which he was thrown down and out of it, and received the injuries from which he died.

One of the questions of fact in the case is, whether or not there was any unusual violence in the jerking or bumping of the car, beyond that which is inevitable to freight trains under the circumstances mentioned in the statement preceding this opinion. There was testimony on both sides of this question. Another question of fact was, whether the death of appellee's intestate was caused by the fall from the car, or by a kick which he is alleged to have received from one of the horses in the car. There is testimony on both sides of this question. Another question of fact was, whether or not the deceased was guilty of contributory negligence. Upon both sides of this question also there was much testimony. Upon all these matters of fact the jury were elaborately instructed, thirteen instructions having been given for the plaintiff, and eighteen for the defendant. Six of the instructions, given for the defendant, were first modified by the court before they were given. Six others asked by the defendant were refused. The verdict of the jury, and the judgment entered thereon in the circuit court, and the judgment of the Appellate Court affirming the judgment of the circuit court, are conclusive upon these questions of fact, so far as this court is concerned.

It is the duty of a railroad company to have a good, substantial and safe road track for the use of its trains; and it is also its duty to see that its trains are properly managed. When a passenger is injured from a failure to perform this duty, the railroad company is guilty of negligence, for which it may be held responsible in damages. Where a passenger is lawfully upon a freight train, and arises, when the train comes to a standstill, either

for the purpose of alighting from the train, or for the purpose of feeding stock, where a contract with the company requires him to do so, and is injured by a sudden start of the train, or by an unusual jerking or bumping of the train, the jury will be justified in finding, that the railroad company is guilty of negligence, if it be shown, that the plaintiff was in the exercise of ordinary care for his safety at the time of the injury. (*Florida Railway and Navigation Co.* v. *Webster*, 25 Fla. 394; *Chicago and Alton Railroad Co.* v. *Arnol*, 144 Ill. 261).

It is claimed, that the deceased was guilty of contributory negligence, upon the alleged ground that, when injured, he was in the car chartered by him where his horses and household goods were, instead of being in the caboose attached to the freight train. It is true, that the contract required the deceased to "ride in the caboose attached to the train conveying the stock." But the contract also states, that "the owner will feed, water and take care of his stock at his own expense and risk." The contract must be so construed as to be consistent with itself. If the deceased was obliged to feed, water and take care of his stock, he had the right to go into the car where the stock was in order to fulfill this obligation. Counsel for appellant claim, that, while the train was in motion, it was the duty of the deceased to be in the caboose, and that only when the train stopped did he have any right to go to his own car to feed and water his stock. The evidence tends to show, that, when the train stopped at LaSalle, the deceased was in his own car, and was there engaged in watering his stock, and was assisted in so doing by the conductor and brakeman of the train. While he was thus engaged in feeding and watering his stock, the train suddenly started, and did not again stop, until it reached the place where the accident occurred. The stop made at LaSalle would appear to have been a very short one, and not long enough to enable the deceased to finish the acts of at-

tention, which he was giving to his stock.   It was a fair question to be submitted to the jury, whether, under all the circumstances, the servants of appellant in charge of the train did not fail to give the deceased sufficient time to feed and water his stock, and return to the caboose before the train started.   After the train started and while it was in motion, it was not possible for him to reach the caboose.   It was a question, therefore, for the jury to determine, whether or not the deceased was guilty of contributory negligence in being in the car, and, whether or not he was not forced to remain there by reason of the conduct of the servants of the appellant in causing the train to start before he had finished caring for the stock.

If there had been no provision in the contract of shipment requiring the deceased to feed and water his stock, it would have been the duty of the appellant to do so, and appellant would have been liable to the deceased for a loss or injury occurring to the stock, in case it had failed to discharge this duty.   But, inasmuch as, by the terms of the contract, the duty of caring for the stock was assumed by the deceased as the shipper thereof, the appellant was under obligations to afford him a reasonable opportunity and reasonable facilities for doing what the contract required him to do.   It failed to furnish him such reasonable opportunity and facilities, if it refused to detain its train long enough, at a proper stopping place, to enable him to feed and water his stock, and return to the caboose before the starting of the train. (5 Am. & Eng. Ency. of Law—2d ed.—pp. 436, 437).

*Second*—It is assigned as error by the appellant, that the court gave certain instructions for the appellee upon the trial below.   Complaint is made of the first and second of such instructions.   These instructions announce, in substance, that such portion of the contract, as required the intestate to be conveyed at his "own risk of personal injury from any cause whatever, except injuries

arising from gross carelessness of the railroad company," was null and void, and of no binding effect. The question, presented by the objection to these instructions, is, whether a common carrier can, by contract, exempt itself from liability for negligence in the conveyance of a passenger, provided only such negligence is not gross in its character. Many of the cases make a distinction between negligence and gross negligence, and hold, that a carrier may exempt itself from liability for the former, though not for the latter. Undoubtedly the great weight of authority is in favor of the position, that the carrier cannot by contract exempt itself from liability for ordinary negligence. It would certainly seem to be against public policy, that a common carrier, owing a duty to the public to carry its passengers safely, and to exercise the highest degree of care and skill in doing so, should be allowed to exempt itself from liability for any degree of negligence, which should cause an injury to a passenger. (5 Am. & Eng. Ency. of Law—2d ed.—p. 618).

It is said, however, that in Illinois a carrier may by contract limit its liability for all negligence, except gross negligence. This rule has been laid down in some cases in reference to the shipment and carriage of property, but does not apply, when a carrier intends to limit its liability for personal injury to a passenger paying fare. Where a passenger was traveling in the cars of a railroad company upon a free pass given him by the company, and received injuries to his person, it has been held, that a contract, exempting it from liability for any other species or degree of negligence than gross negligence, was valid. (*Illinois Central Railroad Co.* v. *Read*, 37 Ill. 484; *Toledo, Wabash and Western Railway Co.* v. *Beggs*, 85 id. 80). But, in the present case, it cannot be said that the deceased intestate was riding upon a free pass. "A person who is traveling, with the consent of the railroad company, upon a freight train in charge of stock or goods carried by the company for him, is a passenger. (*I., B. & W. Ry. Co.* v. *Beaver*, 41 Ind.

493; *Lawson* v. *C.*, *St. P.*, *M. & O. R. R. Co.* 64 Wis. 447). Even where such a person is traveling in charge of cattle on a drover's pass, he is a passenger for hire; the consideration for his passage is the service he renders in taking care of the cattle, or the charge made against him or his employer for shipping the cattle.—*Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Indianapolis, etc. Railroad Co.* v. *Horst,* 93 U. S. 291; *C., P. & A. R. R. Co.* v. *Curran,* 19 Ohio St. 1; 3 Am. & Eng. Ency. of Law, p. 16, and cases cited in notes; *Lake Shore and Michigan Southern Railroad Co.* v. *Brown,* 123 Ill. 162." (*New York, Chicago and St. Louis Railroad Co.* v. *Blumenthal,* 160 Ill. 40). Inasmuch as the deceased was a passenger, the degree of care required of the appellant for his safety was "the highest reasonable and practicable skill, care and diligence." (*Chicago and Alton Railroad Co.* v. *Arnol,* 144 Ill. 261, and cases there cited). In the case of *Arnold* v. *Illinois Central Railroad Co.* 83 Ill. 273, it seems to have been held that a railroad company could make a contract with a passenger on a freight train to exempt itself from liability for any other negligence than gross negligence. That case proceeded upon the theory, that there was a difference between the obligation of a railroad company to carry a passenger upon a freight train, and its obligation to carry a passenger upon a passenger train, in respect to the degree of care required to be exercised. In later cases, however, it has been held, that a carrier will be held to the same strict accountability for the negligence of its servants, resulting in injury to a passenger who is lawfully and properly on a freight train, as governs its liability for such negligence where the transportation is upon a train devoted to passenger service exclusively. (*Chicago and Alton Railroad Co.* v. *Arnol, supra; New York, Chicago and St. Louis Railroad Co.* v. *Blumenthal, supra*). A railroad company cannot exempt itself from the exercise of care and diligence in conveying its passengers, and cannot, even by contract, limit its liability for injuries to passengers to gross negligence alone. It

is responsible for any degree of negligence which is sufficient to cause the injury, whether the negligence be called gross or ordinary. The requirement of such responsibility is demanded upon grounds of public policy.

It is contended by appellee, that, under the law of Iowa where the contract was made, it was void, and of no binding effect. Upon the trial of the case the plaintiff below introduced in evidence section 1308 of the Iowa code, which is as follows:

"Sec. 1308. No contract, receipt, rule or regulation shall exempt any corporation engaged in transporting persons or property by railway from liability of a common carrier of passengers, which would exist, had no contract, receipt, rule or regulation, been made or entered into."

The plaintiff below also introduced in evidence the opinion of the Supreme Court of Iowa in the case of *McDaniel* v. *Chicago and Northwestern Railway Co.* 24 Iowa, 412, holding, that a contract, similar to that here under consideration, was made void by said section 1308, and could not be enforced in Iowa.

Whether or not the restriction of appellant's liability, as contained in this contract, was void or not by reason of said section 1308, depends upon the further question, whether it is to be construed according to the law of Iowa, or the law of Illinois if the law of Illinois were such as it is claimed to be by the appellant. The contract was executed in the State of Iowa. As a general rule, the law of the State, in which a contract for carrying is made, controls as to its nature, interpretation and effect. In *Pennsylvania Co.* v. *Fairchild*, 69 Ill. 260, we said (p. 263): "The rule upon that subject is well settled, and has often been recognized by this court, that contracts are to be construed according to the laws of the State where made, unless it is presumed from their tenor that they were entered into with a view to the law of some other State." (See also *Milwaukee and St. Paul Rail-*

*way Co.* v. *Smith,* 74 Ill. 197). We discover nothing in this contract to indicate, that, in entering into it, the parties had in view the law of any other State than that of Iowa. In *Michigan Central Railroad Co.* v. *Boyd,* 91 Ill. 268, where the goods were shipped from Massachusetts to Lincoln, Illinois, and the contract of shipment was made in Massachusetts, we said (p. 271): "The contract for the carriage of the goods having been made in Massachusetts, the law of that State must control as to its nature, interpretation and effect." It is contended by counsel for appellant, that this contract should be interpreted in accordance with the law of the place where it is to be performed. This action is brought in Illinois, and the injury resulting in Beebe's death occurred in Illinois. There is nothing in the terms of the contract itself to indicate that the parties intended any performance thereof in the State of Illinois. If there was any intention, that the contract should be performed in any other State than Iowa, the performance must have been contemplated as taking place in the State of Indiana rather than in the State of Illinois, because the property carried was to be taken to Indiana. The performance of the contract was to be consummated in the latter State. If, however, the contract be regarded as one, which was to be partly performed in Iowa and partly in Illinois, it yet must be said of it, that it is a contract which is entire and indivisible. "If a contract be entire and indivisible, and is to be partly performed in the State where it is made, and partly in another, then the *lex loci contractus,* or the law of the State where it is made, governs as to its validity, and, if invalid there, it is invalid everywhere else." (Rorer on Inter-State Law, p. 69; *McDaniel* v. *Chicago and Northwestern Railway Co. supra;. Western Railroad Co.* v. *Exposition Cotton Mills,* 81 Ga. 522). Inasmuch, therefore, as the contract, under the construction contended for by appellant, was partly to be performed in Iowa, it must, as to its validity, nature, obligation and interpretation, be

governed by the law of Iowa. This being so, it was void under section 1308, and the instructions complained of were not erroneous.

The objections, made by appellant to the third and eighth instructions given for appellee, are disposed of by what has already been said. As to the objections to the eleventh, twelfth and thirteenth instructions given for the plaintiff below, it is sufficient to say that appellant asked similar instructions in its own behalf which were given; and, therefore, it is estopped from complaining. (*Illinois Central Railroad Co.* v. *Latimer*, 128 Ill. 163; *Consolidated Coal Co.* v. *Haenni*, 146 id. 614).

*Third*—The appellant further complains, that counsel for plaintiff below was guilty of making improper remarks to the jury. The counsel was severe in his comments upon the character of some of appellant's witnesses. These comments, however, were called forth and justified by the remarks previously made in his address to the jury by one of the counsel for appellant. Aside from this, however, when the remark complained of was made by the counsel for the plaintiff below in his closing address to the jury, counsel for appellant objected to the same, and the court sustained the objection. Counsel for appellant are estopped from here complaining of a ruling made by the court below, which was in their favor. After the court made a remark, which amounted in substance to a sustaining of the objection so made, counsel for the appellant did not ask the court for any further ruling upon the subject. They were content with the action of the court, so far as it went. They did not request the court to rule out the objectionable remark, and, therefore, it cannot now be said that there was a refusal to rule it out. In arguing cases to the jury, attorneys must be allowed to make reasonable comments upon the evidence, and upon the bearing of the witnesses giving the evidence. The interests of public justice require, that counsel should not be subjected to any unreasonable re-

strictions in this regard.  We discover nothing erroneous in the action of the court below upon this subject.

The judgments of the Appellate Court and of the circuit court are affirmed.          *Judgment affirmed.*

Mr. JUSTICE BOGGS took no part in the decision of this case.