### Illinois Central Railroad Company v. Albert Rothschild.

1. PASSENGER AND CARRIER—*when relation exists.* A person in charge of cattle which are being transported for hire is a passenger where he travels upon a freight train by consent of the carrier.

2. PASSENGER AND CARRIER—*what makes prima facie case of negligence.* Proof that the plaintiff was a passenger for hire, that the car in which he was riding collided with another train of the defendant, while the plaintiff was in the exercise of due care, and that he was injured by reason of such collision, makes a *prima facie* case of negligence on the part of the defendant.

3. PASSENGER AND CARRIER—*what essential to absolve latter from liability for negligence where prima facie case has been made.* Where the plaintiff has made a *prima facie* case, the burden is cast upon the defendant to show that the injury in question was not caused by a neglect by the defendant of its duty toward the plaintiff. The defendant is not bound to show that the injury in question resulted from "an unavoidable accident" or from some cause against which human prudence and foresight could not have provided.

4. PASSENGER AND CARRIER—*when erroneous instruction as to extent of duty of latter will not reverse.* Notwithstanding an instruction is erroneous in that it required that the defendant exercise a higher degree of care than that imposed by law, a reversal will

not follow where the defendant did not by its evidence meet and overcome the proper legal burden imposed upon it.

5. REMITTITUR—*when does not cure excessive verdict.* An excessive verdict cannot be cured by a *remittitur* where the damages are so large as to compel the conclusion that the jury were either misled by the rulings of the court or were unduly influenced by sympathy, prejudice, partiality or misconception.

6. DAMAGES—*what evidence incompetent upon question of.* It is error to permit a plaintiff suing for personal injuries to state in answer to a direct question that he has a family consisting of a wife and several children..

7. DAMAGES—*what evidence incompetent upon question of.* It is incompetent to permit a plaintiff suing for personal injuries to show what were his business qualifications prior to his injury.

8. DAMAGES—*what evidence competent under allegation of special.* In an action for personal injuries and under an allegation of special damages, it is competent to show a contract held by the plaintiff prior to his injury and the amount of his past and estimated future profits and earnings therefrom.

9. PHYSICAL CONDITION—*how proof of, may be made.* It is competent to show the condition of nervousness by witnesses other than experts.

10. ARGUMENT OF COUNSEL—*what improper upon.* It is improper for counsel in an action for personal injuries to state to the jury the statutory limitation of damages for wrongfully causing death.

11. NEW TRIAL—*when fainting of plaintiff in presence of jury not ground for.* The fainting of the plaintiff in the presence of the jury is not ground for a new trial in the absence of proof of simulation.

Action in case for personal injuries. Appeal from the Circuit Court of Mason county; the Hon. THOMAS N. MEHAN, Judge, presiding. Heard in this court at the November term, 1906. Reversed and remanded. Opinion filed June 1, 1907.

NORTRUP & WILLIAMS and LEMON & LEMON, for appellant; JOHN G. DRENNAN, of counsel.

LYMAN LACEY, JR., CHARLES NUSBAUM and BEACH, HODNETT & TRAPP, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case, by appellee against appellant, for the recovery of damages for personal injuries

alleged to have been received by appellee while a passenger upon one of appellant's railroad trains. A trial by jury resulted in a verdict and judgment in favor of the plaintiff for $25,000, to reverse which the defendant prosecutes this appeal.

The declaration to which the plea of the general issue was interposed, consists of ten counts, each of which aver, in substance, that the plaintiff, as agent for one Hubley, shipped upon one of defendant's trains known as No. 64, two carloads of cattle; that he was in charge of the same and riding upon the caboose of said train by the direction and consent of the defendant, and as a passenger for hire and reward. The first five counts further charge that the servants of the defendant in charge of said train, carelessly, negligently and recklessly ran and drove the engine of another train known as No. 54, at a high rate of speed, upon and against the caboose in which the plaintiff was riding, injuring him, etc. The sixth count charges negligence in providing defective and insufficient couplers between two of the cars of train 64 by reason whereof the train broke in two, causing the air brake to set, the train to stop, and train 54 to collide with the caboose; the seventh, in running the two trains upon a schedule time too close together; the eighth, the failure of those in charge of the rear train to observe the signals to stop given them by those in charge of the forward train; the ninth, the failure of those in charge of the forward train to give signals of warning to those in charge of the rear train; the tenth, the failure of those in charge of the forward train, after having knowledge thereof, to awaken the defendant and warn him of the approach of the rear train. In addition to the usual allegations as to damages, each count avers that the plaintiff, in consequence of the injuries received by him was prevented from attending to his usual business and from earning large emoluments; that for two years prior to the time of the injury he had been employed by one Hubley to care for

the property and interest of her minor child, and that he was also employed by said Hubley under a special contract whereby Hubley furnished all money necessary to buy, feed and sell cattle, and appellee performed the labor in buying, raising, feeding and selling the said cattle, and the said Hubley and appellee divided equally the profits arising from said business; that he received for his services in looking after the interest of the minor son in the land, $60 per month; that his share of the net profits of the buying, feeding and selling cattle under the contract with Mrs. Hubley amounted to $3,000 per year; that by reason of his said injuries he is and ever will be wholly incapacitated from attending to his said business or any part thereof; and is and will be unable to earn or receive any of said wages or profits or any part thereof.

The evidence shows that appellee, as agent for one Hubley, loaded and shipped two loads of cattle upon appellant's cars to be carried from Mason City, Illinois, a station upon its road, to Chicago. The cars were attached to a stock train known as No. 64, which left Mason City at 3:30 o'clock P. M. Upon the arrival of the train at Clinton, appellee, who accompanied and had charge of the cattle while in transit, went to bed in the caboose attached to the train. At about midnight, after the train had left Clinton, and while it was running at the rate of thirty miles an hour, the coupling between two of the cars parted, causing the air brakes to set automatically and the train to stop. Closely following said train No. 64 was a merchandise train known as No. 54, which was running at the rate of fifty miles an hour and slightly ahead of its scheduled time. When No. 64 stopped, the brakeman upon the rear end of the train ran back upon the track and by means of fusees and a lantern endeavored to warn No. 54 in time to avert a collision. His efforts were unsuccessful and the latter train ran into and collided with the caboose in which appellee was sleeping, causing the injuries for which this suit is brought.

It is urged that appellee was not shown by the evidence to have been a passenger and certainly not a passenger for hire.

There was evidence tending to show that appellee had in his possession at the time he was injured a document which he denominated as a "drover's pass," and that after he had retired to the caboose, the conductor in charge of the train examined the same and made no objection to appellee's continuing to ride. One traveling by the consent of a railroad company upon a freight train in charge of cattle, which are being transported for hire, is a passenger for hire whether supplied with a drover's pass or not. R. Co. v. Beebe, 174 Ill. 13; R. Co. v. Anderson, 184 Ill. 294.

In the absence of any proof to the contrary, the jury were warranted in assuming from the fact that the cattle were being carried, that someone had agreed to pay for their transportation. In such case the consideration for the passage of appellee who was in charge of them was the service he rendered in caring for them, or the charge made against him or his employer for carrying the cattle. R. Co. v. Beebe, *supra*. The admission of parol evidence of the contents of the shipping contract or drover's pass or ticket, as to which complaint is made, could not therefore have harmed appellant.

The proof that appellee was a passenger for hire, that the car in which he was riding collided with another train of appellant, while appellee was in the exercise of due care, and that he was injured by reason of such collision, made a *prima facie* case of negligence on the part of appellant. Traction Co. v. Wilson, 217 Ill. 47, and cases cited. The burden was thus cast upon appellant to show that the collision was not caused by a neglect of its duty toward appellee; that is, to do all that human care, vigilance and foresight can reasonably do for his safety while a passenger, consistent with the mode of conveyance, the practical operation of its road, and the exercise of its

business as a carrier. R. Co. v. Polkey, 203 Ill. 225; Traction Co. v. Wilson, *supra*. If the presumpton of negligence thus established was not overcome by appellant, appellee was manifestly entitled to a verdict under the counts of his declaration which charge negligence generally, and it is unimportant whether or not he has established the averments of those which aver particular acts of negligence. R. Co. v. Cotton, 140 Ill. 486.

The third instruction given for appellee was erroneous in that it, in effect, told the jury that the rule of *res ipsa loquitur* above stated cast upon appellant the burden of proving that the injury resulted from "an inevitable accident or from some cause against which human prudence and foresight could not have provided." This instruction imposed upon appellant a much higher degree of care than is warranted by law. In the exercise of human prudence and foresight, many precautions suggest themselves which would greatly lessen the danger of travel by rail, the adoption of which, however, would be utterly inconsistent with the practical operation of a railroad and the proper exercise of its business as a common carrier. To compel a railroad to adopt the same, would in many instances greatly hamper, if not practically destroy, its usefulness. But no harm could have been occasioned by the giving of the instruction for the reason that appellant failed to meet and overcome the proper legal burden imposed upon it. It is conceded by counsel that the accident was due to the uncoupling of two of the cars in train No. 64. Assuming that this was the direct cause of the collision, it is manifest that the cars would not ordinarily have become uncoupled had due care been exercised in the selection of proper coupling appliances and in reasonable inspection and proper handling of the same. It is a matter of common knowledge that cars will not become uncoupled through atmospheric changes or superhuman or supernatural agencies, but that such occurrences are al-

most invariably due to one or more of the causes mentioned. It is further contended that the court erred in its rulings upon others of the instructions given and refused, and upon questions of evidence, all pertaining to the cause of the accident and appellant's liability therefor. Such of the rulings as were erroneous could not have prejudiced appellant for the reason that under the foregoing views its liability was clearly established by the uncontroverted facts.

We are of opinion that the contention that the court erred in its rulings upon questions affecting the amount of the verdict, is well founded.

Although appellee was seriously and permanently injured, the amount awarded as damages is so unusually large that we cannot escape the conclusion that the jury were either misled by the rulings of the court, or were unduly influenced by sympathy, prejudice, partiality or misconception. A number of errors were committed upon the trial, of which we shall notice but the following: Over the objections of appellant, appellee was permitted to state in answer to a direct question that he had a family consisting of a wife and two children. The court has heretofore held that the admission of similar evidence in an action of this character was manifest error. Ry. Co. v. Omer, 101 App. 155. Appellee, while testifying, was asked whether since he was injured, he was able to ride or mount a horse; to which he replied "No, and I don't think I ever will be." A motion by appellant to exclude the answer was interposed and overruled. This was also manifest error. Witnesses were permitted to testify over the objections of appellant, as to the business qualifications of appellee prior to his injuries. This too was error. The evidence of his condition at such time should have been confined to the state of his health. Another witness, not an expert, after stating that since his injuries appellee was nervous at all times, volunteered the further statement that he, the witness, attributed such condition to the fact that appellee was a cripple, and to the shock caused

by the collision; which answer the court improperly refused to strike from the record upon motion. It was competent to show nervousness by a non-expert (Dimick v. Downs, 82 Ill. 570), but the uncalled for opinion of the witness was incompetent and would have been if given by a qualified expert. R. Co. v. McCollum, 122 App. 531. It was obviously so when volunteered by a layman.

We think that the evidence as to the contract of appellee with Mrs. Hubley and the amount of his past and estimated future earnings and profits therefrom, was competent under the averment of the declaration of special damages. City v. O'Brennan, 65 Ill. 160; R. Co. v. Friedman, 146 Ill. 583; R. Co. v. Meech, 163 Ill. 305; R. Co. v. Barber, 77 App. 257; R. Co. v. McDonnell, 194 Ill. 82.

It was improper for counsel for appellant to state to the jury in argument the statutory limitations of damages for wrongfully causing death, and the court properly sustained an objection thereto.

Affidavits presented in support of the motion for a new trial disclose that at the close of the testimony of appellee, and as he was leaving the witness stand, he suddenly fell to the floor, crying out as though in pain, and then relapsed into an apparent fainting condition and that he was at once surrounded by a number of relatives and friends, whereby considerable excitement ensued. While in the absence of any proof that the party was feigning, we are not prepared to hold that such an incident would be ground for disturbing a verdict, in the present instance it tended to and doubtless did arouse the sympathies of the jury, and may have caused them to award greater damages than they would have otherwise.

Be that as it may, the damages awarded seem to us to be clearly excessive, and we are satisfied that this is not a case where a *remittitur* remedied the evil. R. Co. v. Binkopski, 72 App. 22.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*