**James M. Smith, Administrator, Appellee, v. E. W. Hersh, Appellant.**

1. AUTOMOBILES—*statute requiring stopping to prevent frightening of horses, construed.   Held,* that the statute in question was intended to apply to cases where motor vehicles met horses in the highway and not where they pass horses going in the same direction.

2. INSTRUCTIONS—*when cannot be complained of.*   A party cannot complain of instructions given by the opposite party where his own instructions contain the same defects.

3. VERDICTS—*when set aside as against the evidence.*   A verdict will be set aside on review if manifestly against the weight of the evidence.

Appeal from the Circuit Court of Jasper county; the Hon. THOMAS M. JETT, Judge, presiding.   Heard in this court at the October term, 1910.   Reversed and remanded.   Opinion filed April 15, 1911.

FITHIAN & KASSERMAN, for appellant.

SHAMHART & ISLEY, for appellee.

MR. PRESIDING JUSTICE SHIRLEY delivered the opinion of the court.

The first two counts of appellee's amended declaration each charged a breach of statutory duty while

the third count charged negligence at common law. There was a verdict generally for appellee for $500 damages upon which the court rendered a judgment.

The statute upon which the first count was based reads as follows: ''Whenever it shall appear that any horse driven or ridden by any person upon any * * * highway is about to become frightened by the approach of any such motor vehicle it shall be the duty of the person driving or conducting such motor vehicle to come to a full stop until such horse or horses shall have passed.'' Hurd's Stat. 1908, sec. 269, chap. 121.

We are of opinion there was no evidence tending to prove a violation of the provision of the statute quoted.

Appellee's intestate in company with her husband was traveling on the highway in a covered buggy with side curtains, the back curtain was rolled up. The husband was driving two horses about five years old. The horses were not accustomed to the sight of motor vehicles, never having seen one before this occasion. Appellant driving an automobile came up behind the buggy of the intestate traveling in the same direction. The highway at that point was about forty feet wide with ditches on each side making the traveled portion about thirty-five feet wide. As appellant came near the buggy he sounded the horn on the car. He and his companion who testified, both say the horn was sounded about a half quarter of a mile from the buggy and again twice before coming up with it. When the car came up it attempted to pass around the buggy when the horses took fright and ran, overturning the buggy and throwing both occupants out.

The statute quoted it seems to us was intended to apply to cases where motor vehicles meet horses in the highway and not to cases where they pass horses going in the same direction.

The duty imposed by the statute upon the driver of

the motor is to stop *"until such horse or horses shall
have passed."* To say that the motor should stop
while the horse passes it going in the same direction
would be an absurdity. The legislature did not in-
tend by the use of this language to require the driver
of a motor to stop until a horse going in the same
direction should pass around him.

The right to pass around horses in the highway
either meeting or following them must of course be
exercised by that degree of care and prudence in driv-
ing the motor, consistent with the safety of others.
The right to pass does not mean that he may do so
without a reasonable degree of care under all the cir-
cumstances of the situation. Automobiles are lawful
means of conveyance and their use is being constantly
increased everywhere. They have equal rights upon
the highway with horses but it is the duty of those
using them to take into account the unusual appear-
ance of the machine, its noise, its new use in the
vicinity, its tendency to frighten horses and all other
pertinent considerations, and to use them with that
reasonable degree of care which under all the circum-
stances ordinary prudence and care for the safety of
others suggest. These are duties imposed by the law
in the absence of any present statute for their regula-
tion. Christy v. Elliott, 216 Ill. 31; Shinkle v. McCul-
lough, 116 Ky. 960.

At the request of appellee the court gave to the
jury instructions based upon the duty of appellant to
come to a full stop if it appeared appellee's horses
were about to become frightened. The instructions
were erroneous. The statute requiring appellant to
come to a full stop having no application, there was no
duty to stop. The measure of appellant's duty was
the common law duty to exercise reasonable care under
all the circumstances, which may or may not have re-
quired him to come to a full stop.

Appellant, however, cannot complain of the instruc-

tions since some of his instructions are also based upon the same statute. A party cannot complain of instructions given by the opposite party when his own contain the same defects. Railroad Co. v. Beebe, 174 Ill. 13; Con. Coal Co. v. Haenni, 146 *id.* 614.

The second count of the declaration charged driving the motor at a greater rate of speed than was reasonable and proper having regard to the traffic and use of the way, so as to endanger life and limb and injure the property of travellers thereon, whereby appellee was injured, and the third count charged negligence in driving at a dangerous speed calculated to frighten horses and thereby causing appellee's horses to become frightened and run away, whereby she was thrown out and injured.

Upon examination of the instructions based upon these counts, the correctness of which is questioned by the assignment of errors, we find them substantially correct, nor do we find any error in the court's ruling upon special findings asked by appellant.

While there is some evidence tending to show a liability under the second and third counts of the declaration, we are of opinion the verdict is against the decided weight of the evidence.

The breach averred in the respective counts as a cause of the injury complained of was an unreasonable rate of speed so as to endanger life and limb, and a dangerous rate of speed calculated to frighten horses.

The testimony of the intestate was that she didn't see the automobile until it was right up close to the buggy. She said it appeared she could touch it; that immediately the horses ran, that she was thrown out striking on the side of her head and when she recovered the appellant was there and put her in his car. She said on cross-examination she had not more than hit the ground until she was going to the car to get in. The husband of appellee's intestate who was driving says he does not know the rate of speed of

the car but that the horses were running at full speed and it kept up with them. On cross-examination he says he didn't know how far it was behind him and it is apparent from his testimony that the horses started to run when the car came up and undertook to pass around the buggy, and that in his efforts to hold them his attention was not toward the car and he did not know where it was. The other testimony concerning speed introduced on behalf of appellee is of no importance as it furnishes no evidence of the speed of the car at the time of the accident.

Appellant in giving his version of it says when he sounded the horn the last time, the driver of the buggy turned slightly to the left and appellant started to go around, and when the car was far enough alongside the off horse so he could turn his head and see the machine he started to run, when appellant immediately stopped the car and the engine. He says he was familiar with the speed of the car and that it was not running in excess of four miles per hour; that he had on the low speed clutch.

His companion corroborates appellant that he had on the low speed clutch and when the horse became frightened he immediately stopped.

It is manifest we think that considering the opportunity of the witnesses to know the facts of the transaction, the great weight of the evidence is that the car was not going at a high or dangerous rate of speed.

The court erred in denying appellant's motion for a new trial and the judgment will be reversed and the cause remanded.

*Reversed and remanded.*