J. M. COATS *et al.* Appellees, *vs.* THE CHICAGO, ROCK IS-
LAND AND PACIFIC RAILWAY COMPANY, Appellant.

*Opinion filed February 19, 1909—Rehearing denied April 8, 1909.*

1. CARRIERS—*law of place where the contract of carriage was
made governs.* Where suit is brought in Illinois against a carrier
for damage to goods shipped from a point in one foreign State to
a point in another foreign State though delivered by the defendant
to a connecting carrier in Illinois, the laws of the State where
the contract was made must control as to its nature, interpretation
and effect, where it does not appear to have been made in view of
the laws of any other State. (*Wabash Railroad Co. v. Thomas,*
222 Ill. 337, distinguished.)

2. SAME—*when a carrier cannot be held liable for damages to
goods.* No recovery can be had in Illinois against a carrier for
damage to goods shipped from one foreign State to another for-
eign State and delivered by the defendant to a connecting carrier
in Illinois, where the proof shows that the bill of lading limited
the defendant's liability to its own line, and that under the law of
the State where the contract was made the shipper's assent to such
limitation, in the absence of fraud or mistake, was implied from
his accepting the bill of lading, and where there is no proof of such
fraud or mistake or that the damage occurred on defendant's line.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. S. C. STOUGH, Judge,
presiding.

This suit was begun by appellees in the superior court
of Cook county against appellant, a common carrier, to re-
cover damages alleged to have resulted from the appellant's
failure to deliver eleven car-loads of potatoes loaded on its
line in Iowa in April, 1890, destined to Philadelphia, and
consigned to Pancoast & Griffith's potato yard, Second and
Masters streets, Philadelphia, Pa. The suit was commenced
in August, 1898. The declaration contained thirty-four
counts, with the common counts added, being three counts
for each car. The first count charged that defendant was a

common carrier, and alleged that the plaintiffs, on or about April 10, 1890, at Walnut, Iowa, delivered to it and loaded in its car, potatoes of the value of $800, to be carried by defendant to Philadelphia and there delivered to plaintiffs' agent at the potato yard, Second and Masters streets, in said city, and that, in consideration of the premises and of certain rewards to the defendant, it promised plaintiffs safely to deliver same. The count further avers that defendant failed to deliver said potatoes, and that by and through its negligence in that behalf they were wholly lost to plaintiffs. The second count, after alleging the delivery of the potatoes to the defendant at Walnut, Iowa, avers defendant promised to deliver them to Pancoast & Griffith at the potato yard in Philadelphia within a reasonable time, and further avers that it did not do so but negligently and unreasonably delayed the same, whereby they were decayed, spoiled and became lost to plaintiffs. The third count charges that defendant undertook and promised to take due and proper care of the potatoes but failed to do so, whereby they were lost to plaintiffs. The declaration contains three similar counts as to each of the other cars. Defendant pleaded the general issue and also a plea of the five year Statute of Limitations. To the latter plea plaintiffs replied that the promises of the defendant in the declaration mentioned were in writing, and that the said several causes of action, and each of them, accrued within ten years next before the commencement of the suit. After issue joined a trial was had by jury, and at the conclusion of the evidence the court directed a verdict in favor of defendant. From the judgment entered upon the verdict of the jury so returned plaintiffs prosecuted an appeal to the Appellate Court for the First District. That court reversed the judgment of the superior court and remanded the case for a new trial. (*Coats* v. *Chicago, Rock Island and Pacific Railway Co.* 134 Ill. App. 217.) Upon the second trial, at the conclusion of the evidence for plaintiffs, and again at the conclusion of all the evidence, defend-

ant moved the court to direct a verdict in its favor. The court denied these motions, and the jury returned a verdict in favor of plaintiffs for $16,000, upon which the court rendered judgment, and defendant appealed to the Appellate Court. After requiring a *remittitur* of $4000 from the judgment the Appellate Court affirmed the judgment of the superior court, and defendant has brought the case to this court by appeal.

M. L. BELL, (BENJAMIN S. CABLE, of counsel,) for appellant:

Plaintiffs, in suing upon an express contract, are bound by its terms. There was a fatal variance between the contract alleged and the proof. *Railroad Co.* v. *Jaggerman,* 115 Ill. 407; Hutchinson on Carriers, sec. 1338; *Baxter* v. *Railroad Co.* 165 Ill. 78; *Friedman case,* 146 id. 583.

The contracts evidenced by the bills of lading sued on were not "written contracts" to carry to Philadelphia, within the meaning of the Statute of Limitations, and the action was barred. *Pennsylvania Co.* v. *Railroad Co.* 144 Ill. 197; *Wood* v. *Williams,* 142 id. 269; *Knight* v. *Railroad Co.* 141 id. 110; *Benefit Ass.* v. *Loomis,* 142 id. 560; *Railroad Co.* v. *Jaggerman,* 115 id. 407.

The contracts involved in this suit were governed by the laws of Iowa. *Pennsylvania Co.* v. *Fairchild,* 69 Ill. 260; *Railroad Co.* v. *Smith,* 74 id. 197; *Railroad Co.* v. *Boyd,* 91 id. 268; *Transportation Co.* v. *Furthmann,* 149 id. 66; *Railroad Co.* v. *Beebe,* 174 id. 13; *Mather* v. *Express Co.* 2 Fed. Rep. 49; *Thomas case,* 63 id. 200.

Under the laws of Iowa, where the contracts sued on were made, plaintiffs were bound by that clause of the bills of lading limiting the railway company's liability to such loss as should occur on its own line. *Mulligan* v. *Railroad Co.* 36 Iowa, 181; *Hartley* v. *Railroad Co.* 115 id. 612.

In determining what the law of Iowa is, this court is bound by the decisions of the Iowa courts. *Pennsylvania*

*Co.* v. *Fairchild,* 69 Ill. 260; *Railroad Co.* v. *Smith,* 74 id. 197; *Forepaugh* v. *Railroad Co.* 128 Pa. 127; *Bank* v. *Howard,* 71 N. H. 13; *Steel Co.* v. *Bank,* 34 Ind. App. 107; *Tolman Co.* v. *Reed,* 115 Mich. 71; *Hazel* v. *Railroad Co.* 82 Iowa, 477; *Talbott* v. *Transportation Co.* 41 id. 247.

MAGRUDER, THOMPSON & CANDEE, (E. F. THOMPSON, of counsel,) for appellees:

The undertakings of appellant, as evidenced by the bills of lading, were written contracts to carry through to Philadelphia. *Railroad Co.* v. *Johnson,* 34 Ill. 389; *Railroad Co.* v. *Merriman,* 52 id. 123; *Railroad Co.* v. *Simon,* 160 id. 652; *Railroad Co.* v. *Boyd,* 91 id. 268; *Field* v. *Railroad Co.* 71 id. 458; *Railroad Co.* v. *Jaggerman,* 115 id. 407; *Railroad Co.* v. *Montfort,* 60 id. 175; *Transportation Co.* v. *Moore,* 88 id. 136; *Railroad Co.* v. *Thomas,* 222 id. 337; *Knight* v. *Railroad Co.* 141 id. 110.

A bill of lading is a written contract, within the meaning of the Statute of Limitations. *Railroad Co.* v. *Johnson,* 34 Ill. 393.

Where a contract is to be performed in several jurisdictions, each portion is to be interpreted, in respect to questions relating to performance, according to the laws of the State where it is to be performed. *Pomeroy* v. *Ainsworth,* 22 Barb. 118; *Pope* v. *Nickerson,* 3 Story, 474; *Hartman* v. *Railroad Co.* 39 Mo. App. 95; Story on Contracts, sec. 655; *The Kensington,* 183 U. S. 263; *Brown* v. *Railroad Co.* 83 Pa. St. 316; *Curtis* v. *Railroad Co.* 74 N. Y. 119; 2 Wharton on Conflict of Laws, sec. 401; Story on Conflict of Laws, secs. 282, 294.

The courts of the State where a contract was partially performed and where the suit is brought will apply the construction of the common or unwritten law of the State where the contract was partly performed and where the suit is pending, and not that of the State where the contract of

shipment was made or the bill of lading was issued. *Faulkner* v. *Hart,* 82 N. Y. 413; *Hoyt* v. *Thompson,* 19 id. 225; Wheeler on Carriers, chap. 8, pp. 200, 201; *Franklin* v. *Twogood,* 25 Iowa, 520; *Bank* v. *Green,* 33 id. 146; *Johnson* v. *Railway Co.* 91 id. 248; *Cattle Co.* v. *Bank,* 127 id. 153; *St. Nicholas* v. *Bank,* 128 N. Y. 26; *Bishop* v. *Chase,* 76 Am. St. Rep. 515; *Peck* v. *Bligh,* 37 Ill. 317; *Haskell* v. *Brown,* 65 id. 29.

Mr. JUSTICE FARMER delivered the opinion of the court:

The agreement relied on by plaintiffs (hereinafter referred to as appellees) and introduced in evidence by them was the bill of lading, and is as follows:

"(Form 265.)
CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY CO.
*Grain Bill of Lading.*
WALNUT, *April 10, 1890.*

"Received from Coats & Hatton the following described grain, in apparent good order, (quantity and value unknown,) consigned as in the margin, to be transported over the line of this road to Chicago station and delivered in like good order to the consignee or owner at said station, or to such company or carriers (if the same are to be forwarded beyond said station) whose line may be considered a part of the route to the place of destination of said grain, it being distinctly understood that the responsibility of this company as a common carrier shall cease at the said station where delivered to such person or carriers; and if such person or carrier cannot furnish cars for the transfer of said grain within forty-eight hours after arrival, this company reserves the right to put said grain in store at the expense of the owner, adding the amount of said expense to the freight bill, for collection at destination; but it guarantees that the rate of freight for the transportation of said grain from the place of shipment to Englewood shall not exceed .... per .... and charges advanced by this company. * * * All car-load freight shall be subject to a minimum charge for trackage and rental of one dollar per car for each twenty-four hours' detention, or fractional part thereof, after the expiration of forty-eight hours from its arrival at destination. This bill of lading is to be presented without alteration or erasure.

| Consignees, | Car number. | Initials. | Kind of grain. | Said to weigh. |
|---|---|---|---|---|
| Pancoast & Griffith, 2nd & Master Sts. Potato Yard, Philadelphia, Pa. | 7691. | Union Line: | Bulk Potatoes. | 44800. |

F. B. LEFEBER, *Freight Agent.*"

A similar instrument was given appellees by appellant for each car shipped. The first two cars were shipped on April 10, 1890, and the remaining nine cars on later dates during the same month. None of them were delivered to the consignees at their destination under three weeks from the date of shipment, and some of them were delayed for a much longer period. The evidence showed that a reasonable time for shipment from Iowa to the place of destination was five or six days. It was contended by appellant on the trial that the potatoes reached the yards of the connecting carrier in Philadelphia within a reasonable time after the shipment, and that the failure to deliver to the consignees at the potato yard was due to the consignees themselves. However that may be, that question is not open to review by this court on this appeal. It is also contended by appellant that the bills of lading introduced in evidence are not written contracts or agreements to carry to Philadelphia, but are agreements to carry to Chicago and there deliver to connecting lines; that if there was any obligation to carry to Philadelphia assumed by appellant it was not in writing, but was implied by law from the receipt of the goods marked to a destination beyond appellant's lines. It is also contended by appellant that the contracts were made in Iowa and are to be governed by the laws of that State, and that under the laws of the State of Iowa appellees were bound by the limitation in the bills of lading of appellant's responsibility to its own lines. In the view we take of the case the decision of this question is decisive of the case, and although other points than those mentioned are raised and discussed in the briefs of both parties, we shall confine our discussion to the one question.

At common law a common carrier is not bound to undertake to transport goods beyond the termini of its own lines, but where it accepts goods marked and directed to a destination beyond the termini of its own lines the law implies an agreement to carry and deliver at the place of des-

tination. (*Wabash, St. Louis and Pacific Railway Co.* v. *Jaggerman,* 115 Ill. 407; *Chicago and Northwestern Railway Co.* v. *Simon,* 160 id. 648.) The same rule is announced in Iowa and many other States. But the carrier may, by an express contract to that effect, obligate itself to deliver at a place of destination though such place be beyond the terminus of its own line. It has also been held in this State that the carrier may, by contract with the shipper, limit its liability to such damage or loss as may occur on its own line. (*Illinois Central Railroad Co.* v. *Frankenberg,* 54 Ill. 88; *Chicago and Northwestern Railway Co.* v. *Chapman,* 133 id. 96, and cases there cited.) The same is the rule in Iowa and is sustained generally by the weight of authority. In this State a common carrier cannot, by stipulation or limitation in the receipt given for property for shipment, limit its liability unless it be shown that the shipper understood and assented to the limitation, and when the contract containing the limitation is the bill of lading, which constitutes both a receipt and contract, the burden is on the carrier to show the restrictions of its common law liability were assented to by the shipper. (Hurd's Stat. 1908, chap. 114, par. 96; *Chicago and Northwestern Railway Co.* v. *Simon, supra.*) A different rule seems to obtain in Iowa. In that State it is held that in the absence of fraud, imposition or mistake, the shipper's assent to the limitations embraced in the bill of lading, though signed only by the carrier, will be presumed by his acceptance of it and acting upon it. The bills of lading in this case recited the receipt of the goods from appellees, "consigned as in the margin, to be transported over the line of this road to Chicago station and delivered in like good order to the consignee or owner at said station, or to such company or carriers (if the same are to be forwarded beyond said station) whose line may be considered a part of the route to the place of destination of said grain, it being distinctly understood that the responsibility of this company as a common carrier shall

cease at the said station where delivered to such person or carriers." It is conclusively settled by the decisions of this court that the contract having been made in Iowa, and not, so far as it appears, with a view to the laws of any other State, it must be governed by the law of the State where it was made. The decisions are not all in harmony upon this question. Appellees cite many eminent and respectable authorities holding a contrary view, but the decisions in this State are uniform in support of the view we have announced.

In *Pennsylvania Co.* v. *Fairchild,* 69 Ill. 260, a shipment of goods was made in Indiana, marked to the consignee at Leavenworth, Kansas. The Pennsylvania Company's line, the initial line of shipment, did not extend to Leavenworth, and on the arrival of the goods at Chicago the Pennsylvania Company delivered them to the Chicago and Alton Railroad Company, a connecting carrier, and while in that company's possession they were destroyed by the great Chicago fire of 1871. The bill of lading issued by the Pennsylvania Company contained a clause restricting its liability to its own line and exempting it from loss occasioned by fire. On the trial the company proved that by the law of the State of Indiana when it delivered the goods to the connecting carrier its liability ceased. The court said (p. 263) : "The contract for the carriage of these goods was made in Indiana, and the question is, by what law is the contract to be governed? The rule upon that subject is well settled and has often been recognized by this court that contracts are to be construed according to the laws of the State where made, unless it is presumed from their tenor that they were entered into with a view to the law of some other State. There is nothing in this case, either from the location of the parties or the nature of the contract, to show that they could have had the law of Illinois in view, or any other law than that of the place where it was made."

In *Milwaukee and St. Paul Railway Co.* v. *Smith,* 74 Ill. 197, goods were delivered to the railroad company at Milwaukee, Wisconsin, marked and directed to Eau Claire, in the same State. The railroad company's line did not extend to that place, but to reach it the goods were required to be delivered by it to a connecting carrier. The court said that under the law of this State the contract would be treated as one to carry and deliver at Eau Claire, an implied agreement to that effect resulting from receiving the goods so marked and directed. The railroad company proved that under the law of Wisconsin a railroad company was only liable to deliver to the connecting carrier, and this court held that the contract must be governed by the law of Wisconsin. Appellees contend that the reason for so applying the law in that case was that the contract so made was to be wholly performed in the State of Wisconsin. The decision, however, does not appear to be based upon that distinction.

In *Michigan Central Railroad Co.* v. *Boyd,* 91 Ill. 268, goods were delivered to the Boston and Albany Railroad Company in Boston, Massachusetts, marked and directed to the consignees at Lincoln, Illinois. The Boston and Albany railroad did not extend to Chicago, and that company delivered the goods to the Michigan Central Railroad Company, a connecting carrier, at Detroit, Michigan. The latter company carried the goods to Chicago, the terminus of its line, and placed them in its warehouse, where they were destroyed by the fire in 1871. The bill of lading contained a provision that the responsibility of the carrier over whose lines the goods were shipped was to cease when they were delivered to a connecting carrier, and also exempted the carrier from liability for destruction of the goods while in its depot, and for loss or damage occasioned by providential causes, or by fire from any cause whatever while in transit or at station. It was stipulated on the trial that the law of Massachusetts was as stated by the Supreme Court of that

State in *Grace* v. *Adams,* 100 Mass. 505, and *Hoadley* v. *Northern Transportation Co.* 115 id. 304. The law as declared in those decisions was as stated by the court: "A bill of lading or shipping receipt taken by a consignor, without dissent, at the time of the delivery of the property for transportation, by the terms of which the carrier stipulates against such liability, (*i. e.,* the liability of a carrier, in the absence of a special contract, under the common law,) would exempt the carrier when the loss was not caused by his own negligence, on the ground that such acceptance would authorize him to infer assent, and amount to evidence of the contract between the parties." The court said: "The contract for the carriage of the goods having been made in Massachusetts, the law of that State must control as to its nature, interpretation and effect." (Citing cases.)

In *Merchants' Despatch Transportation Co.* v. *Furthmann,* 149 Ill. 66, goods were shipped from New York to Chicago, which it was claimed were spoiled *en route,* and suit was brought for damages. The court said (p. 70): "The contract of carriage having been entered into there, the laws of New York will control as to its nature, interpretation and effect. Authorities need not be cited in support of this proposition."

No distinction is made in this State because the goods, in reaching their destination, may be carried into or through Illinois. In *Illinois Central Railroad Co.* v. *Beebe,* 174 Ill. 13, the court said (p. 26): "It is contended by counsel for appellant that this contract should be interpreted in accordance with the law of the place where it is to be performed. This action is brought in Illinois and the injury resulting in Beebe's death occurred in Illinois. There is nothing in the terms of the contract itself to indicate that the parties intended any performance thereof in the State of Illinois. If there was any intention that the contract should be performed in any other State than Iowa, the performance must have been contemplated as taking place in the State of In-

diana rather than in the State of Illinois, because the property carried was to be taken to Indiana. The performance of the contract was to be consummated in the latter State. If, however, the contract be regarded as one which was to be partly performed in Iowa and partly in Illinois, it yet must be said of it that it is a contract which is entire and indivisible. 'If a contract be entire and indivisible and is to be partly performed in the State where it is made and partly in another, then the *lex loci contractus,* or the law of the State where it is made, governs as to its validity, and if invalid there it is invalid everywhere else.' (Rorer on Inter-State Law, p. 69; *McDaniel* v. *Chicago and Northwestern Railway Co.* 24 Iowa, 412; *Western Railroad Co.* v. *Exposition Cotton Mills,* 81 Ga. 522.) Inasmuch, therefore, as the contract, under the construction contended for by appellant, was partly to be performed in Iowa, it must, as to its validity, nature, obligation and interpretation, be governed by the law of Iowa."

On the trial of this case appellant introduced in evidence the opinions of the Supreme Court of Iowa in *Mulligan* v. *Illinois Central Railroad Co.* 36 Iowa, 181, and *Hartley* v. *St. Louis, Keokuk and Northwestern Railroad Co.* 115 id. 612; also section 2074 of the code of Iowa. The *Mulligan case* held that the law does not impose upon common carriers the duty of undertaking to transport goods beyond the termini of their respective routes; that whatever liability for such transportation exists, it arises either from express contract or from an implied agreement arising from the acceptance of goods consigned to points beyond the termini of their routes. "As they are originally under no obligation to undertake to transport beyond the end of their lines, it is clear that they may by special agreement stipulate that they shall not be liable beyond such point." That case also holds that the bill of lading possesses the dual character of a receipt for the delivery of the goods and a contract containing the stipulations under which

their transportation is to be undertaken. The shipment in that case was made in Iowa, marked and directed to a consignee in New Orleans. The railroad company's line at that time extended only to Cairo, Illinois, and it delivered the goods at that place to the connecting carrier. The stipulation in the bill of lading was as follows: "It being understood that the said Illinois Central Railroad Company assumes no other responsibility as to said property than such as may be incurred on its own road." The shipper claimed that he did not accept the receipt or bill of lading with knowledge of the stipulation nor with the intention of assenting to it. Upon this proposition the court said: "A bill of lading, like a deed poll and many other classes of contracts, is signed by one party only, and in such case the evidence of assent upon the part of the other party usually consists in his accepting and acting upon it, and the evidence of assent derived from his acceptance of the contract without objection is usually conclusive. * * * It not appearing that any fraud or imposition was practiced nor that any mistake intervened, the plaintiff must be conclusively presumed to have become acquainted with its contents, and if he did not do so the consequences of his folly and negligence must rest upon himself. Courts cannot undertake to relieve parties from the effects of such inattention and want of care. If once they should enter this doubtful domain it is impossible to foresee to what lengths their interference might be pressed or to what limits it would finally admit." In *Hartley* v. *St. Louis, Keokuk and Northwestern Railroad Co. supra,* the shipment was from Iowa to Texas, which was beyond the terminus of the line of the carrier receiving the goods for shipment, and the bill of lading contained a clause limiting said carrier's liability to its own line. In an elaborate opinion referring to a very large number of authorities both in support of and in conflict with the law as declared in the State of Iowa, the court adhered to the rule announced in the *Mulligan case,* and said that section 2074

of the code did not affect the contract, because said section of the code only applied to a liability created by the common law, and the common law imposed no obligation on the carrier to transport beyond its own line; that if such obligation existed it must arise out of a contract, and it is competent in such contract for the carrier to limit its liability.

The evidence shows that the goods reached Philadelphia within a reasonable time after shipment from Iowa, and that the delay in delivery to the consignees, which resulted in the damage to the potatoes, occurred after they had reached said city. There is no proof of any damage occurring to the potatoes or of their being delayed while on appellant's lines or of there being any unnecessary delay in the delivery of the goods to the connecting carrier at Chicago. Treating the contract as one for the carriage of the goods from Iowa to their destination, as appellees contend it must be treated, and applying to its interpretation and effect the law of the State of Iowa, the place where the contract was made, as we think clearly must be done in this State, there is no proof to establish any liability of appellant. This question was not raised in *Wabash Railroad Co.* v. *Thomas,* 222 Ill. 337, hence that case is not in conflict with previous decisions of this court nor with the views herein expressed.

Appellees insist that even if the law of. Iowa be applied, the proof shows the bills of lading were not delivered by appellant to appellees until after the shipments were made, and therefore appellees are not bound by their terms and stipulations. Even if this were a defense under the law of the State of Iowa, we do not think the proof supports appellees' contention. The evidence shows appellees had been engaged for several years prior to the shipment of potatoes in controversy, in shipping goods over appellant's road to distant points, very frequently beyond its lines. Appellees testified they shipped from four hundred to five hundred cars per year, and for all of them they received the same

form of bill of lading as those delivered them for the potatoes. The usual course of business was to give appellant's agent shipping directions, and the agent afterwards made out and delivered to appellees bills of lading. Sometimes these were made out and delivered to appellees on the day shipment was made and sometimes a day or two afterwards, and this was the course pursued in the shipment of the potatoes. Appellee Hatton testified he never read the bills of lading but always accepted them and made no objections thereto. Appellee Coats testified he read the forms of the bills of lading used by appellant but could not say whether he read the bills of lading for the potatoes or not. Under the law of Iowa the elements that would invalidate the contract are fraud, imposition or mistake, and this the proof clearly fails to establish. In *Field* v. *Chicago and Rock Island Railroad Co.* 71 Ill. 458, the court had under consideration a shipment of flour made by plaintiff to New York City. The bill of lading contained stipulations limiting the liability of the carrier. It was claimed by the plaintiff that he had no knowledge of those stipulations and did not assent to them. The court said: "It was impossible, in the very nature of things, their contents should not have been known and well understood by the plaintiff, and it is in proof that the clauses here complained of were understood by the shippers generally, and it is inconceivable that a party shipping eight hundred barrels of flour, in different lots, should not have knowledge of them. It is past reasonable belief."

Appellees also contend that it was error to admit in evidence the law of Iowa, said law not having been specially pleaded. But this question has not been preserved for our review by the assignment of cross-errors.

It follows from what we have said that the judgments of the superior court and of the Appellate Court were erroneous, and they are therefore reversed and the cause remanded to the superior court.

*Reversed and remanded.*