## Frank Simpson Fruit Company, Defendant in Error, v. Southern Pacific Company, Plaintiff in Error.

### Gen. No. 14,867.

1. COMMON CARRIERS—*right of connecting carrier.* A connecting carrier is entitled to every advantage from the contract of carriage which the contracting carrier could himself derive from it.

2. COMMON CARRIERS—*by what laws obligations of governed.* The laws of the state where the bill of lading was delivered will control as to the nature, interpretation and effect of the contract for carriage.

3. EVIDENCE—*what tends to establish law of sister state.* The opinion of the highest court of a foreign state interpreting and declaring the law of such state, is proper evidence of the law of that state.

4. EVIDENCE—*what does not tend to establish law of sister state.* The opinion of the Supreme Court of one state on a question controlled by the law of another state is inadmissible as evidence of the law of such other state.

Error to the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed October 6, 1910.

JOHN MAYNARD HARLAN and M. C. McGIFFIN, for plaintiff in error; OLIVER B. WYMAN, of counsel.

CHARLES A. BUTLER, for defendant in error.

MR. JUSTICE BAKER delivered the opinion of the court.

In an action of the fourth class in the Municipal Court for damages sustained by the owner of 488 crates of tomatoes, by reason of the alleged breach of duty of the defendant, the delivering carrier, to give said tomatoes proper care while in its possession and control, the jury found the defendant guilty and assessed plaintiff's damages at $1,000. The court denied defendant's motion for a new trial, gave judgment on the verdict and the defendant sued out this writ of error.

The instrument signed by the trial judge and certified by him to contain a "correct statement of the facts appearing on the trial and of all questions of law involved therein and the decisions of the court on such questions of law," is in part

a statement of facts; in part a statement of certain evidence introduced by the defendant, and in part a statement of evidence offered by the defendant and excluded. This is the statement of facts in said instrument:

"The following facts appeared from said evidence: That on or about May 6, 1905, Chase & Company, commission merchants of Jacksonville, Florida, delivered to L. E. Spencer, the agent of the Atlantic Coast Line Railroad Company, at Jacksonville, Florida, 488 crates of tomatoes marked and consigned to the Simpson-Hack Fruit Company, (which company was succeeded by Frank Simpson Fruit Company, plaintiff herein), Los Angeles, California; that said 488 crates of tomatoes were, at the time and place last mentioned, loaded into a car belonging to the Atlantic Coast Line Railroad Company, and known as car A. C. L. 25,862; that the contents of said car were thereupon checked by the loading agent of the Atlantic Coast Line Railroad Company at that time and place; that the vents (the vents being for the purpose of letting the heated air which arises from the vegetables out of the car) in said car were open at the time said car left Jacksonville, Florida; that the tomatoes contained in said crates were then in sound, merchantable condition and suitable for shipment, and that said crates of tomatoes were properly loaded in said car and in the usual and customary manner of loading tomatoes for long distance shipments.

"That on the 19th day of May, 1905, the said car A. C. L. 25,862 arrived on defendant's line of railroad at Los Angeles, California, containing 488 crates of tomatoes; that the vents in said car were then closed; that the car was then very hot and if the vents had been kept open the car would have been much cooler upon its arrival at Los Angeles; that upon examination it was found that said tomatoes had greatly deteriorated in value, and that they were in a heated, spoiled and decaying condition and unsalable except as damaged merchandise; that the agent of defendant at Los Angeles examined said tomatoes on their arrival at Los Angeles, and admitted that they were in very bad condition.

"That the fair and reasonable market value of said toma-

160    APPELLATE COURTS OF ILLINOIS.

F. Simpson Fruit Co. v. Southern Pacific Co., 157 Ill. App. 158.

tees at Los Angeles, California, upon said 19th day of May, 1905, in good, sound, merchantable condition, was $2,440, and that the fair and reasonable market value of said tomatoes at said time and place in the condition in which they did arrive was $732; that the value of labor in repacking said tomatoes so as to render them salable was $20, and that the amount of freight paid by the said plaintiff to the said defendant on said shipment was $494.35."

The evidence introduced by defendant was parts of depositions taken by plaintiff, which the plaintiff had not put in evidence, and consisted of the testimony of one of the shippers of said tomatoes that their market value at the time and place of shipment was from $1.00 to $1.25 per crate, and the testimony of the cashier of the shippers that he received on the morning of May 6, 1905, from a clerk in the office of the receiving carrier an instrument marked "Plaintiff's Exhibit C," signed by the agent of the carrier. Said "Exhibit C" was put in evidence by the defendant. Said exhibit is in form a bill of lading of said tomatoes. It in terms gives the shipper the election of accepting its conditions, "printed on the face and back hereof and the reduced rates applying thereto," or of paying the full rate, which was 20 per cent more than the reduced rate (subject to a minimum increase of one cent per hundred pounds) and holding the carrier to its common law liability. Condition 3 printed on the back of the instrument is as follows:

"The amount of any loss or damage for which any carrier becomes liable shall be computed at value of the property at the place and time of shipment under this bill of lading unless a lower value has been agreed upon or is determined by the classification upon which the rate is based. In either of which events such lower value shall be the maximum price to govern such computation."

The evidence offered by the defendant and excluded is the opinion of the Supreme Court of Florida in the case of Atlantic Coast Line R. R. Co. v. Dexter et al., 50 Florida, 180.

The defendant, a connecting carrier, is entitled to every advantage from the contract for the carriage which the con-

tracting carrier could himself derive from it.    Hutchinson on Carriers, 3rd ed., sec. 473.

The tomatoes were shipped from Jacksonville, Florida, to Los Angeles, California, the receipt or bill of lading was delivered in Florida, and the laws of Florida will control as to the nature, interpretation and effect of the contract for the carriage.    Coats v. C. R. I. & P. Ry. Co., 239 Ill. 154.

In order to defend under the law of Florida the defendant was bound to prove the law of that State.

The opinion of the highest court of a foreign State, interpreting and declaring the law of such State, is proper evidence of the law of that State.    Coats v. C. R. I. & P. Ry Co., *supra.*

In the Dexter case the Brady Union Stock Yards, the agent of the plaintiffs, delivered to a carrier at Atlanta, Georgia, a carload of horses for carriage to a point on defendant's road in Florida, and accepted and signed a stock contract or bill of lading containing certain limitations on the carrier's liability.    The receiving carrier delivered the horses to the defendant in Florida, and the action was against the second carrier for damage to the horses.    The portion of the opinion in that case material to the decision of this case is as follows:

"After the defendant had introduced in evidence without objection the two 'live stock contracts' or bills of lading under which it was admitted the railroad company received the stock for carriage and shipment, and had made H. F. Dexter, one of the plaintiffs, its witness, and had proved by him that he had received and ridden on a pass issued with such contract, the plaintiffs' counsel on cross-examination of said Dexter propounded to him the following question: 'Were you acquainted with the terms of this bill of lading, and did you agree to the same?'    To this question the defendant objected on the grounds:    (1)    The bill of lading has already been admitted by them to be the contract under which said stock was shipped.    (2)    The plaintiffs accepted the benefits of the free pass under the contract; and, (3), the railroad companies were induced to accept the said stock by the acquiescence of the plaintiffs to the terms of the said bill of

lading, hence they are estopped to deny the acceptance of same. These objections were overruled and the question allowed, which ruling is assigned as error. The witness answered as follows: 'I didn't know anything about the terms of this bill of lading, neither did I agree to the same. Brady Union Stock Yards took the bill of lading and then the bill of lading and pass are sent to the hotel and I know nothing about it until the bill of lading and pass get to the hotel.' The court below erred in this ruling for various reasons. The rule is quite generally settled in the United States that an acceptance by a shipper or his agent of a receipt or bill of lading containing a limitation of the carrier's liability is binding on him when the limitation is not illegal or unreasonable. And that it is not essential to the validity of such a limitation that it be shown that the shipper was aware of it, or that he had read it, or that it had been explained to him or his attention called to it, provided the carrier made use of no improper means to prevent his noticing or objecting to it. And that every shipper is conclusively presumed, in such a case, to have read and assented to the provisions of the receipt or bill of lading given him, whether he in fact assented or not. 5 Am. & Eng. Ency. of Law, (2nd ed.), pp. 293 and 294, and numerous authorities there cited. The stock contract or bill of lading here inquired about had been admittedly received by the shipping plaintiffs, had been accepted and signed by their shipping agent, the Brady Union Stock Yard, and the plaintiff had admittedly received and ridden upon a free pass issued to him by the railroad company as a part of the contract of shipment, and no obstacles were shown to have been thrown in his way to prevent his fully familiarizing himself with the terms of the contract and each and every of its conditions. Under these circumstances it made no difference whether the plaintiffs ever expressly assented to the contract or not, or even read or knew of its terms and conditions, they are fully bound thereby, and are estopped from gainsaying or repudiating it. What is here said disposes also of the assignment of error predicated upon the ruling of the court in permitting one P. T. McGriff, a witness, and shipping agent

for the plaintiffs, to testify to his nonassent to, and want of knowledge of, the terms and conditions of the second live stock contract or bill of lading involved in the case."

The contention of counsel for plaintiff in error as to the rule of law announced and declared in the Dexter case is thus stated in their brief: "In the Dexter case the Supreme Court of Florida stated the law of that jurisdiction to be that 'An acceptance by a shipper or his agent of a receipt or bill of lading containing a limitation of the carrier's liability is binding on him when the limitation is not illegal or unreasonable.  And that it is not essential to the validity of such a limitation that it be shown that the shipper was aware of it, or that he had read it, or that it had been explained to him or his attention called to it, provided the carrier made use of no improper means to prevent his noticing or objecting to it.  And that every shipper is conclusively presumed, in such a case, to have read and assented to the provisions of the receipt or bill of lading given him, whether he in fact assented or not.  5 Am. & Eng. Enc. of Law (2nd ed.), pp. 293 and 294, and numerous authorities there cited.' "  With this contention we are unable to agree.

The opinion must be read and examined as a whole, in the light of the facts on which it is based, and the question before the court for its decision, to determine what rules of law are thereby announced and declared.

In this case the question presented is whether, in a case where the shipper only received from the carrier a receipt or bill of lading, on the back of which was a provision limiting the liability of the carrier, the assent of the shipper to such provision is conclusively presumed.

In the Dexter case the question presented was whether in a case where a stock contract or bill of lading, containing a provision limiting the liability of the carrier, was received by the shipping plaintiffs and accepted *and signed* by their shipping agent, and one of the plaintiffs received and rode on a free pass issued to him as a part of the contract of shipment, and the carrier used no improper means to prevent the plain-

tiffs from noticing such provision, the assent of the plaintiffs to such provision is conclusively presumed.

It is true that in the course of the opinion the court in the Dexter case made use of the language quoted in the brief for plaintiff in error, but that part of the opinion begins with the words: "The rule is quite generally settled in the United States that an acceptance by a shipper," etc.

The opinion then proceeds as follows: "The stock contract or bill of lading here inquired about had been admittedly received by the shipping plaintiffs, had been accepted and signed by their shipping agent, the Brady Union Stock Yard, and the plaintiff had admittedly received and ridden upon a free pass issued to him by the railroad company as a part of the contract of shipment, and no obstacles were shown to have been thrown in his way to prevent his fully familiarizing himself with the terms of the contract and each and every of its conditions. Under these circumstances it made no difference whether the plaintiffs ever expressly assented to the contract or not, or even read or knew of its terms and conditions, they are fully bound thereby, and are estopped from gainsaying or repudiating it."

The words, "under these circumstances" in the opinion refer to and include only the facts just before stated in the opinion. It is on those facts that the decision is based that: "it made no difference whether the plaintiffs ever expressly assented to the contract or not, or even read or knew of its terms and conditions, they are fully bound thereby and are estopped from gainsaying or repudiating it."

We do not regard the decision in the Dexter case as applicable to the facts of this case, and think that the trial court did not err in excluding the opinion in that case.

The ruling of the trial court may, we think, be affirmed on another ground. The contract before the court in the Dexter case was not made in Florida, but at Atlanta, Georgia, where the horses were shipped and the bill of lading delivered. The law of Georgia, not the law of Florida, controlled as to the nature, interpretation and effect of the contracts for carriage, and we do not think that the opinion of the Supreme Court

of Florida on a question controlled by the law of Georgia was admissible as evidence of the law of Florida.

Finding no error in the record, the judgment is affirmed.

<div align="right">

*Affirmed.*