### J. J. Waxelbaum, Plaintiff in Error, v. Southern Railway Company, Defendant in Error.

### Gen. No. 16,297.

1. COMMON CARRIERS—*burden to establish assent to limitations of liability.* Under the law of Illinois the burden is upon the carrier to show assent of the shipper to the terms of a contract limiting its common law liability.

2. COMMON CARRIERS—*when law of sister state governs contract of shipment.* The law of the place of making controls in the in-

terpretation and effect to be given to a contract of shipment.

3. COMMON CARRIERS—*when limitations of liability valid in sister state enforced.* If a carrier is permitted by the laws of a sister state to limit its common law liability, such a limitation of liability will be recognized and enforced in the courts of this state even though the carrier fail to establish the assent of the shipper to the conditions of limitation imposed by the bill of lading.

4. COMITY—*how law of sister state determined.* If the reported decisions of the courts of a sister state are relied upon to establish the law thereof they should be read to the court and not to the jury, and the court should determine what the law of such sister state is. *Held*, further, in this case that the reading of the law to the court in the presence of the jury was a mere technical error which would not work a reversal.

Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed March 13, 1912.

CHARLES A. BUTLER, for plaintiff in error.

POMEROY & MARTIN, for defendant in error.

MR. JUSTICE DUNCAN delivered the opinion of the court.

J. J. Waxelbaum, trading as J. J. Waxelbaum & Company, sued Central of Georgia Railway and Southern Railway Company for $493 as damages to a carload of peaches shipped by the plaintiff in error from Goggins, Ga., July 18, 1906, to Seeseel & Ashner at Memphis, Tenn. The damages claimed are for the alleged negligence of the carriers in failing to properly re-ice and care for the peaches while *en route.* The suit was dismissed as to the Central of Georgia Railway, and in a jury trial judgment was rendered in favor of the Southern Railway Company in bar of the action and for costs, and Waxelbaum prosecutes this writ of error.

The bill of lading issued to plaintiff in error at Goggins, Ga., contains the following provisions:

"No carrier shall be liable for loss or damage not occurring on its portion of the route, nor after said

property is ready for delivery to consignee * * *; neither of the said carriers shall be responsible or liable for any act, omission or negligence of the other carriers over whose lines said property is, or is to be, transported.

"Claims for loss or damage shall be made in writing to the agent at point of delivery promptly after arrival of the property, and if delayed for more than thirty days after the delivery of the property, * * * no carrier hereunder shall be liable in any event."

The evidence of the plaintiff in error is that no notice of his claim was presented to the defendant in error within thirty days after his shipment arrived at Memphis. The evidence for the defendant in error is to the effect that it did not receive such notice until in September following such shipment. It is claimed by counsel for plaintiff in error that Mr. Blount, salesman and manager for Ashner-Brothers of Memphis, gave notice of the claim of plaintiff in error to defendant in error on arrival of the peaches at Memphis. This statement seems to be based on Blount's testimony to the effect that he informed a Mr. Smith, who was working in the office of the defendant in error, of the bad condition of the peaches on their arrival in Memphis, and that he, Blount, immediately ordered the car re-iced by the Tennessee Ice Company. This testimony falls far short of giving any notice to defendant in error of this claim. He merely told the agent of the defendant in error that the peaches were in bad condition. There was no suggestion by him that defendant in error was responsible for that condition or that any one was claiming that it was, and it was not even suggested by Blount that any carrier had caused such damage or bad condition. Blount himself testified that his firm never filed a claim for damages to the fruit with the defendant in error within thirty days after delivery of the same. Notice to the Fruit Growers Express or to the Central of Georgia, if given within the thirty days, was not notice to the Southern.

Neither would the suggestion or consent of the Central of Georgia to the filing of the claim with the Armour Car Lines, be the suggestion or consent of the Southern, as contended by plaintiff in error.  The contract or bill of lading expressly provides that notice in writing shall be delivered to the agent at point of delivery promptly after arrival, etc., and no carrier shall be liable for any act of the other carrier, and the words of the contract must govern, if it is a binding contract.

Under the law of Illinois the burden is upon the carrier to show assent of the shipper to the terms of a contract limiting its common law liability.  Tate v. Mo. Pac. Ry. Co., 157 Ill. App. 105.

But the contract in question was made in the state of Georgia for the shipment of the car in question to Memphis, Tenn., and the car while in transit or at destination was not delivered to any carrier in Illinois, and did not even pass through Illinois.  Therefore, the law of the state of Georgia must control in the interpretation and effect to be given to the contract, as it does not appear to have been made in view of the laws of any other state.  Coats v. C., R. I. & P. Ry. Co., 239 Ill. 154.

In the case of Richmond & D. Ry. Co. v. Shomo, 90 Ga. 496, at page 498, in passing on a similar contract the Supreme Court of Georgia said:

" 'It is to be assumed that when the plaintiff signed this contract he knew its contents; it was his duty to know, and it is not denied that he did.  If it fu to speak the whole contract it was incumbent upon him to see that it did so before he accepted and signed it.'  The rule is well settled that resort cannot be had to a prior parole agreement to add to or vary in behalf of the shipper the terms of a special contract and contained in the bill of lading accepted and signed by him before the goods are shipped where it does not appear that his signing was the result of fraud or mistake. *   *   *   The contract as signed must, therefore, be

taken as the final repository and sole evidence of the agreement between the parties and any limitations in it not inconsistent with the law are binding upon the shipper.''

In Southern Ry. Co. v. Tollerson, 129 Ga. at page 647, the same court said:

''Upon trial the plaintiff put in evidence a written contract entered into between himself and the Southern Ry. Co. * * * In this contract there was the following stipulation: 'That as a condition precedent to any right to recover any damages for loss or injury to said live stock notice in writing of the claims therefor shall be given to the agent of the carrier actually delivering said live stock wherever such delivery may be made and such notice shall be so given before said live stock is removed or is intermingled with other live stock.''

The court held such notice reasonable and then concluded, on page 649 of said opinion, by saying:

''It thus clearly appears from the evidence submitted by the plaintiff on the trial, that the stipulation as to giving the written notice of the claim for damages was not met within the time specified in the contract and therefore a verdict was demanded in behalf of the defendant, and accordingly the court erred in not granting a new trial.''

The foregoing opinions of the Supreme Court of Georgia were proved and read before the court and must be accepted as the law of the case.

There is no force in plaintiff in error's contention that the court erred in allowing the reports read in the hearing of the jury and that therefore they are not to be considered by this court. It was necessary and proper to prove the law of Georgia, and the proof should have been made to the court and not to the jury, and the reports should not have been read in the presence of the jury. But the error was only a technical one that cannot prejudice the plaintiff in error in this case. The plaintiff in error stipulated with defendant in error that the provision above quoted in regard to

giving notice of his claim was reasonable and binding on him, if the contract was entered into. The evidence shows that Waxelbaum knew all about the contract or bill of lading issued by the Central of Georgia; that he had shipped for many years over the same road the same character of fruits and knew what bill of lading he would receive and its provisions. It made no difference therefore whether the bill of lading was delivered to him on the day of shipment or afterwards. Coats v. C., R. I. & P. Ry. Co., 239 Ill. 154.

While the plaintiff in error did testify that he was forced to accept the bill of lading, it is very evident that he simply meant that the railroad company would issue no other bill of lading, and that he had to accept the one given him or not ship on the road. The company had the right under the laws of his own state to make the terms in the bill of lading in question, the only terms upon which his fruit would be shipped.

It will not be necessary to discuss any of the other errors assigned, as it clearly appears from the foregoing that defendant in error was entitled to the judgment rendered. The judgment of the court is, therefore, affirmed.

*Judgment affirmed.*